**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| TERRY BUTLER, | ) | | |
| | ) | | |
| *Plaintiff*, | ) | | |
| | ) | Case No.  11 C 1412 | |
| v. | ) | | |
| | ) | Honorable Judge Zagel | |
| ILLINOIS DEPARTMENT OF | ) | | |
| TRANSPORTATION, | ) | | |
| | ) | | |
| *Defendant*. | ) | | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant ILLINOIS DEPARTMENT OF TRANSPORTATION ("IDOT"), by its

attorney, LISA MADIGAN, Illinois Attorney General, submits the following Memorandum of

Law in Support of Its Motion for Summary Judgment under Federal Rule of Civil Procedure 56:

**INTRODUCTION**

This case arises from Plaintiff Terry Butler's discharge from his employment with IDOT

after he instigated a verbal altercation with and then struck a motorist, knocking him to the

ground next to live lanes of traffic.  Plaintiff, an African American male, says his discharge was

discriminatory.  IDOT maintains that Plaintiff's discharge was non-discriminatory and justified

given Plaintiff's unprecedented conduct toward a member of the public.

From March 1992 to August 2010, Plaintiff was employed as a Highway Maintainer with

IDOT's Emergency Traffic Patrol ("ETP").  (Def.'s Rule 56.1 Statement of Uncontested Material

Facts ("D.56.1") ¶¶ 5-6.)[1]  ETP Highway Maintainers patrol the State's expressways and assist

---

[1]IDOT's Rule 56.1 Statement of Uncontested Material Facts is incorporated herein and provides a
comprehensive recitation of the undisputed facts underlying Plaintiff's claims.  The introduction provided
in this memorandum is not intended to be a complete recitation of the facts but merely a brief introduction
to the issues presented by this case.

motorists.  (D.56.1 ¶ 23.)  On June 25, 2010, while performing his official duties, Plaintiff

instigated a verbal altercation with a motorist.  (D.56.1 ¶¶ 22, 30-31.)  The argument escalated

and eventually culminated in Plaintiff punching the motorist twice and knocking him to the

ground next to live lanes of traffic.  (D.56.1 ¶ 35.)  A member of the public witnessed Plaintiff's

altercation and wrote a letter to IDOT voicing her concern about Plaintiff's behavior.  (D.56.1 ¶¶

43, 45-46.)  That letter caused IDOT's Personnel Services Manager, who previously was

unaware of Plaintiff's altercation, to initiate an investigation.  (D.56.1 ¶ 48.)  Based on the results

of that investigation, IDOT discharged Plaintiff for violence in the workplace, conduct

unbecoming, and poor public image.  (D.56.1 ¶¶ 55, 57.)

Plaintiff subsequently brought this federal action against IDOT.  Plaintiff's Complaint

alleges race discrimination under Title VII (Count I) and the Illinois Civil Rights Act of 2003

(Count II).  (*See generally* Pl's 2d Am. Comp. ("Pl.'s Comp."), Dkt. No. 29.)  Plaintiff alleges

that his discharge was discriminatory because a Caucasian Highway Maintainer, John

McCaffrey, was not discharged after engaging in what Plaintiff characterizes as similar conduct.

(*Id.* ¶¶ 35-36, 45, 57.)  Plaintiff also alleges that IDOT's application of its policies has a disparate

impact on African American employees.  (*Id.* ¶ 29.)  IDOT denies Plaintiff's allegations and now

moves this Court for summary judgment in its favor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c); *Cady v. Sheahan*, 467 F.3d 1057, 1060-61 (7th Cir. 2006).  A genuine issue of material

fact is one that might affect the outcome of the lawsuit; factual disputes that are irrelevant should

not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue

of material fact exists only if "there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party." *Id.* (citation omitted).

## ARGUMENT

Summary judgment on Plaintiff's disparate treatment claims is appropriate for two primary reasons. First, Plaintiff cannot establish a *prima facie* claim of race discrimination because he cannot show (1) that he was meeting IDOT's legitimate expectations or (2) that employees outside of his protected class who were treated more favorably were similarly situated to him in all material respects. Second, even if Plaintiff can establish a *prima facie* claim of discrimination, IDOT had a legitimate, non-discriminatory reason for its actions, which Plaintiff cannot show is pretext for discrimination. Moreover, to the extent that Plaintiff's Complaint can be read to allege a disparate impact claim, summary judgment is appropriate because Plaintiff did not exhaust his administrative remedies as to a disparate impact claim and also cannot produce evidence sufficient to establish a *prima facie* claim of disparate impact.

## I. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S DISPARATE TREATMENT CLAIM BECAUSE PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CLAIM OF DISCRIMINATION. [2]

A plaintiff asserting a claim of discrimination under Title VII has the burden of establishing a *prima facie* claim of discrimination. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). A *prima facie* claim of discrimination can be established either by direct evidence or by the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

### A. Plaintiff Has No Direct Evidence of Race Discrimination.

Direct evidence of discrimination is evidence that "can be interpreted as an

---

[2]To the extent that it can be argued that the Illinois Civil Rights Act ("ICRA") provides a cause of action for disparate treatment and to the extent that Plaintiff's Complaint can be read to assert a disparate treatment claim under the ICRA, Plaintiff's ICRA claim is subject to the same analysis and burden of proof as Plaintiff's Title VII claim and fails for the same reasons. *See Hosick v. Chi. State Univ. Bd. of Trustees*, 924 F. Supp. 2 d 956, 966 (N.D. Ill. 2013) (explaining that analysis for Title VII and ICRA claims are the same and dismissing both claims at summary judgment because plaintiff failed to meet Title VII burden of satisfying all *prima facie* elements and showing pretext).

acknowledgment of discriminatory intent by a defendant or its agents." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). In this case, nobody from IDOT told Plaintiff that he was discharged because of his race or for any reason other than his altercation with a motorist. (D.56.1 ¶ 58.) Moreover, Plaintiff's allegation that IDOT treated a Caucasian employee more favorably is insufficient to establish a *prima facie* case under the direct method. *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012) (evidence of similarly situated employee is not "evidence leading *directly* to conclusion that employer was illegally motivated, without reliance on speculation.") Plaintiff therefore must proceed under the indirect method.

**B.**   **Plaintiff Cannot Establish A *Prima Facie* Claim of Race Discrimination Under the Indirect Method.**

Under the indirect method, a *prima facie* claim of discrimination is established when a plaintiff shows that (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his job satisfactorily; and (4) his employer treated similarly situated employees outside his protected class more favorably. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). Here, it is undisputed that Plaintiff belongs to a protected class and that he suffered an adverse employment action. Plaintiff's claim fails, however, because he was not performing his job satisfactorily at the time of discharge and because he cannot identify an employee outside his protected class who was similarly situated to Plaintiff and treated better.

**1.**   **Plaintiff was not performing his job satisfactorily.**

To determine if an employee was performing his job satisfactorily, the court should look "at the employee's job performance through the eyes of [the employee's] supervisors at the time of" the employment decision. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). This requires a broader analysis than whether the employee's actual job performance was satisfactory and allows for consideration of factors such as discrete instances of misconduct. *See Zayas v.*

4

*Rockford Mem'l Hosp.*, 740F.3d 1154, 1158 (7th Cir. 2014). Moreover, the Seventh Circuit has

explained that an employee "clearly does not meet [the employer's] legitimate expectations"

when the employee engages in workplace violence for which he is terminated, "even if [he] was

an otherwise satisfactory" employee. *Johnson v. Koppers, Inc.*, 726 F.3d 910, 916 (7th Cir.

2013) (employee not meeting employer's expectations when she pushed co-worker, resulting in

discharge, even if employee otherwise performing job satisfactorily); *see Andres v. Waste Mgmt.

of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) (employee not meeting employer's expectations at

time of discharge based on incident of workplace violence).

Plaintiff was not performing his job satisfactorily when he engaged in a verbal and

physical altercation with a motorist. IDOT has an express and legitimate expectation that its

employees refrain from workplace violence. (D.56.1 ¶¶ 10, 11.) IDOT also has a legitimate

expectation that its employees "shall treat all members of the public . . . with respect and

promote a positive public image of the department" (D.56.1 ¶ 8) and that its employees "shall

promote a positive public image of the department and refrain from actions which could bring

discredit or embarrassment to the department" (D.56.1 ¶ 9). It is undisputed that, on June 25,

2010, Plaintiff made the following comment to a motorist: "Where did you learn to drive? In

Beruit?" (D.56.1 ¶ 30.) Plaintiff also reported in writing to IDOT's Personnel Services Manager

that he called that same motorist an "asshole." (D.56.1 ¶ 49.) Then, after "exchang[ing] words

with the motorist (D.56.1 ¶ 31), Plaintiff struck the motorist twice, knocking him to the ground

(D.56.1 ¶ 35). The motorist did not strike Plaintiff. (D.56.1 ¶ 36.) It also is undisputed that a

witness to the occurrence reported to IDOT that Plaintiff "sucker punched [a] motorist in his

face" (D.56.1 ¶ 45) and that she was "cautioned to call or have an IDOT employee assist me in

the future" (D.56.1 ¶ 46). Lead/Lead Worker Joe Novotny, who spoke with people at the scene

shortly after Plaintiff's incident, also reported to management that Plaintiff's conduct was

"appalling" and that Plaintiff "acted in a [sic] unprofessional manner, using verbiage unbecoming of our status as public servants." (D.56.1 ¶ 49.) IDOT even rated Plaintiff's performance as "unsatisfactory" in his final performance evaluation under "Part III: Compliance to Work Policies." (D.56.1 ¶ 59.) Given the evidence concerning Plaintiff's conduct, the public's reaction to Plaintiff's conduct, and Lead/Lead Worker Novotny's assessment of Plaintiff's conduct, Plaintiff cannot show that he was meeting IDOT's legitimate expectation that he refrain from workplace violence, treat members of the public with respect, promote a positive public image, and refrain from actions that could cause discredit or embarrassment to IDOT.

### 2. Plaintiff Cannot Show That John McCaffrey Was Similarly Situated.

Plaintiff alleges that Caucasian Highway Maintainer John McCaffrey was treated more favorably than Plaintiff because, Plaintiff says, McCaffrey also was in a physical altercation with a motorist and was not terminated. (Pl.'s Comp. ¶¶ 35-36, 45, 57.) To establish that a comparator is similarly situated to the plaintiff, the plaintiff must show "that there are no differentiating or mitigating circumstances as would distinguish the employer's treatment of them." *Ineichen v. Ameritech*, 410 F.3d 956, 960-961 (7th Cir. 2005). Here, Plaintiff's altercation is materially different than McCaffrey's in three ways: (1) Plaintiff's and McCaffrey's incidents were not considered by the same decision-maker; (2) Plaintiff instigated his altercation; and (3) Plaintiff's altercation caused public discredit and embarrassment to IDOT.

***Supervisors and Decision-Makers.*** "[A] plaintiff must generally demonstrate at a minimum that a comparator was treated more favorably by the same decision-maker who took an adverse employment action against the plaintiff." *David v. Donahoe*, No. 11 C 3720, 2013 WL 676243, *6 (N.D. Ill. Feb. 25, 2013); *see Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) (explaining that plaintiff failed to identify similarly situated comparator where plaintiff and comparator did not share same decision-maker). Without the same decision-maker,

disparate treatment of employees does not create an inference of discrimination because "[d]ifferent decision-makers may rely on different factors when deciding whether, and how severely, to discipline an employee." *Id.*

IDOT's then-Personnel Services Manager, Giovanni Fulgenzi, initiated the investigation into Plaintiff's incident and made the decision to discharge Plaintiff because of the altercation. (D.56.1 ¶ 55.) In contrast, Fulgenzi made no decisions concerning McCaffrey's incident (D.56.1 ¶ 69) because, quite simply, Fulgenzi was not informed that McCaffrey had engaged in an altercation with a motorist (D.56.1 ¶¶ 62-69). Instead, at or near the time of McCaffrey's incident, Fulgenzi was aware only that McCaffrey had filled out paperwork to file a workers' compensation claim and that "[i]t seemed that Mr. McCaffrey was assaulted by a motorist." (D.56.1 ¶ 63, *see also id.* ¶¶ 64-68.)

Indeed, Fulgenzi was not advised by ETP management in either Plaintiff's or McCaffrey's case that an employee had engaged in an altercation with a motorist. (D.56.1 ¶ 44 (Fulgenzi unaware of Plaintiff's altercation before receipt of letter); *id.* ¶¶ 62-68 (Fulgenzi unaware of McCaffrey altercation in 2009).) Thus, at the local management level both Plaintiff's and McCaffrey's incidents appear to have been treated the same, *i.e.*, neither incident was forwarded to Fulgenzi for discipline. Fulgenzi became aware of Plaintiff's altercation only after a citizen who witnessed Plaintiff's altercation sent Fulgenzi a letter reporting that she had witnessed an IDOT employee "sucker punch[] [a] motorist in his face knocking him to the pavement in the northbound lane of traffic." (D.56.1 ¶¶ 43-46.) Fulgenzi explained at his deposition that the citizen's complaint triggered the chain of events that resulted in Plaintiff's discharge. (D. 56.1 ¶ 48.) Fulgenzi did not receive a citizen complaint regarding McCaffrey and was not otherwise made aware of McCaffrey's altercation. (D. 56.1 ¶¶ 62-68.) Fulgenzi therefore made no decision to discipline, nor not, McCaffrey. (D.56.1 ¶ 69.)

Because Fulgenzi did not know about McCaffrey's altercation, Plaintiff cannot establish that he is similarly situated to McCaffrey. For example, in *Ellis v. United Parcel Serv., Inc.*, an employee was terminated for violating the company's non-fraternization policy. 523 F.3d at 826. The employee alleged that human resources manager, Kenny Walker, terminated him because he was engaged in an inter-racial relationship, while Walker did not terminate other employees who engaged in intra-racial relationships. *Id.* The employee, however, presented no evidence that Walker was aware of the other employees' relationships. *Id.* at 827. In reaching its conclusion that the employee failed to identify a similarly situated comparator, the Seventh Circuit reasoned that, even if Walker would have been the decision-maker to discipline violations of the non-fraternization policy, the employee could not show that his alleged comparators were similarly situated if Walker was unaware of the other employees' relationships:

> For one of [plaintiff's alleged comparators], however, Ellis offered no evidence that Walker knew about the relationship. If Walker did not know that a particular manager was violating the non-fraternization policy, he could not have enforced the policy and disciplined the offending manager. . . . It cannot be said, therefore, that this [comparator] was similarly situated to Ellis.

*Id.* Here, because Plaintiff cannot show that Fulgenzi was aware of McCaffrey's alleged altercation, Plaintiff cannot show that he was similarly situated to McCaffrey. *See, e.g., Thompson v. John J. Madden Mental Health Ctr.*, 35 F.App'x 413, 417 (7th Cir. May 9, 2002) (dismissing employee's argument that comparators were treated more favorably where employee failed to show that employer was aware of comparator's misconduct); *Reed v. Ewald Auto. Group*, No. 08 C 684, 2010 WL 3418306, *12 (E.D. Wis. Aug. 26, 2010) (employee terminated for workplace fighting failed to establish similarly situated comparators where employer was not aware of co-workers' altercations); *Amos v. Tyson Foods, Inc.*, 153 F.App'x 637, 647 (11th Cir. 2005) ("Employees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct.").

***Instigation of the Altercation***[3]  Plaintiff's altercation also is materially distinguishable from McCaffrey's incident because Plaintiff, but not McCaffrey, instigated his altercation. Specifically, Plaintiff's altercation began when Plaintiff first made inappropriate comments to the motorist about his national origin and driving skills.  (*See* D.56.1 ¶ 30.)  Plaintiff also threw the first punch and struck the motorist a second time, even though the motorist never struck Plaintiff.  (D.56.1¶ 35-36.)  In contrast, McCaffrey's incident began when the motorist approached McCaffrey (who was sitting in his truck), became irate, used profane language toward McCaffrey, and then threw a cup of hot coffee on McCaffrey.  (D.56.1 ¶ 73.)  McCaffrey struck the motorist only after the motorist first punched McCaffrey.  (D. 56.1 ¶ 73.)  Because Plaintiff initiated his altercation and threw the first punch, while McCaffrey did not initiate his altercation or throw the first punch, Plaintiff cannot establish that McCaffrey is similarly situated to Plaintiff in all material respects.  *See, e.g., Williams v. Presidential Pavilion, LLC*, No. 05 C 4917, 2007 WL 1772975, *10 (N.D. Ill. June 14, 2007) (concluding as matter of law that comparator not similarly situated because plaintiff initiated fight but comparator did not initiate fight); *Morgan v. Mass. Gen. Hosp.*, 901 F.3d 186, 191 (1st Cir. 1990) (concluding as matter of law that comparator's fight not similarly situated to plaintiff's fight because plaintiff instigated his fight); *Skrocki v. Carpenter Tech. Corp.*, 2007 WL 1002122, *5 (E.D. Pa. Mar. 30, 2007) (concluding as matter of law that instigator of fight not similarly situated to participant in fight).

***Damage to IDOT's Public Image and Reputation.***  Finally, Plaintiff's and McCaffrey's incidents are not similarly situated because Plaintiff's altercation was witnessed by a citizen who reported to IDOT that, after seeing Plaintiff's conduct, she is "cautioned to call or have an IDOT

---

[3] As explained above, Fulgenzi was not aware of McCaffrey's alleged altercation and therefore did not consider any differentiating or mitigating circumstances between Plaintiff's and McCaffrey's incidents. Nevertheless, the similarly situated analysis at the *prima facie* stage is not limited to the decision-maker's viewpoint.  *See Coleman v. Donahoe*, 667 F.3d 835, 851, n.4 (7th Cir. 2012) ("The similarly situated inquiry is about whether employees are *objectively* comparable . . . .") (emphasis in original).

employee assist me in the future." (D.56.1 ¶ 46.) In other words, Plaintiff's conduct caused discredit and embarrassment to IDOT. IDOT received no such complaint concerning McCaffrey's incident. (D.56.1 ¶ 67.)

While IDOT has found no cases directly on point, several courts have concluded that highly visible misconduct is not similarly situated to less visible conduct given the damage that highly visible misconduct can cause to an employer's image. *See, e.g., Mora v. Chi. Tribune*, 57 F. Supp. 2d 626, 636-637 (N.D. Ill. 1999) (plaintiff's physical altercation not similarly situated to comparator's physical altercation because plaintiff's altercation was highly visible); *Gardner v. Streamwood Behavioral Health Ctr.*, No. 02 C 4575, 2004 WL 5185551, *5 (N.D. Ill. Sept. 30, 2004) (considering eye witnesses to employee's altercation in concluding that plaintiff's altercation not similarly situated to comparator's altercation); *Greenfield v. McDonald's Corp.*, No. 310-CV-40, 2011 WL 3859717, *9 (D. Conn. 2011) (comparator's fight not of comparable seriousness to plaintiff's fight because comparator's fight occurred in employer's refrigerator area where plaintiff's fight occurred in full view of customers). Because the evidence shows that Plaintiff's incident caused damage to IDOT's public image but McCaffrey's incident caused no such damage, the two incidents are not similarly situated.

### C. IDOT Had Legitimate, Non-Discriminatory Reasons For Plaintiff's Discharge, Which Plaintiff Cannot Show Are Pretext For Discrimination.

Even if Plaintiff can establish a *prima facie* claim, Plaintiff's claim nevertheless fails because he cannot show that IDOT's reason for his discharge is pretext for race discrimination. If the plaintiff establishes a *prima facie* claim of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its action. *Naficy v. Ill. Dep't of Human Serv.*, 697 F.3d 504, 511-512 (7th Cir. 2012). If the defendant meets its burden, the plaintiff can survive summary judgment only if he produces evidence creating a genuine issue of

fact as to whether the defendant's proffered reasons were a pretext for discrimination. *Id.*

The central issue in any race discrimination case is whether the employer would have taken the same action had the employee been of a different race and everything else remained the same. *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2012) (citing *Carson v. Bethlehem*, 82 F.3d 157, 158 (7th Cir. 1996)). To demonstrate pretext, a plaintiff must show that the defendant's reasons (1) have no basis in fact; (2) that the proffered facts did not actually motivate the adverse action; or (3) that the facts were insufficient to motivate the adverse action. *Bates v. City of Chi.*, 726 F.3d 951, 956 (7th Cir. 2013). The court's inquiry "is limited to whether the employer gave an honest explanation of its behavior." *Meching v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988).

IDOT discharged Plaintiff for violence in the workplace, conduct unbecoming a state employee, and poor public image, stemming from Plaintiff's altercation with a motorist. (D.56.1 ¶¶ 55-56.) The incident was investigated by IDOT management. (*See* D.56.1 ¶¶ 47-49.) Documents gathered during that investigation and considered in the decision-making process included the field report narrative prepared by a state trooper who was at the scene of the incident; a letter from Plaintiff to Fulgenzi in which Plaintiff admits he called the motorist an "asshole," argued with the motorist, and struck the motorist; a memorandum by Plaintiff describing his conduct as an "altercation with motorist"; a memorandum from Lead/Lead Worker Joe Novotny to ETP management reporting the altercation, describing Plaintiff's conduct as "appalling," and explaining that he talked to people at the scene and concluded that Plaintiff "acted in a [sic] unprofessional manner, using verbiage unbecoming of our status as public servants." (D.56.1 ¶ 49.) Documents considered during the decision-making process also included the citizen complaint, in which the citizen witness reported:

I witnessed the driver of IDOT Truck (934) strike a motorist in the face while I

11

> was passing . . . . It appeared that the motorist had touched him on his shoulder and the IDOT employee in turned [sic] sucker punched the motorist in his face knocking him to the pavement in the northbound lane of traffic . . . . This scenario could have been fatal as it relates to the motorist . . . . The IDOT employee didn't appear to be in a life threatening situation. After my experience I'm cautioned to call or have an IDOT employee assist me in the future."

(D.56.1 ¶¶ 45-46) as well as the internal memoranda reporting ETP management's telephone conversation with the citizen witness (D.56.1 ¶ 49).

Fulgenzi explained that inconsistencies between Plaintiff's version of events and information obtained during IDOT's investigation caused Fulgenzi to disbelieve Plaintiff's story. (D.56.1 ¶¶ 51-52.) For example, Fulgenzi explained that Plaintiff said that the motorist "came at" him twice but that the citizen witness reported only one approach. (D.56.1 ¶ 52.) Plaintiff also said that the motorist grabbed his arm and spun him around but the citizen witness reported only that the motorist touched Plaintiff. (D.56.1 ¶ 52.) Based on the information obtained during the investigation, Fulgenzi concluded that Plaintiff "had plenty of alternatives that he chose not to take to avoid the confrontation," such as "just simply walk away." (D.56.1 ¶ 53; *see also, e.g.,* D.56.1 ¶ 37 (after being knocked to ground, motorist went to talk to the state trooper).) Fulgenzi also explained that "the safest thing [Plaintiff] could do was move away from the lane of traffic. Engaging in a fistfight near a live lane of traffic is very dangerous." (D.56.1 ¶ 54.)

Given Plaintiff's poor judgment and abhorrent conduct toward a member of the public, IDOT's decision to discharge him because of the altercation was reasonable. Indeed, the Seventh Circuit has opined that "[i]t is difficult to think of a better reason to fire an employee than for involvement in a physical altercation at work . . . ." *Hudson v. Wal-Mart Stores, Inc.*, 412 F.3d 781, 787 (7th Cir. 2005). And even though Plaintiff maintains that he acted in self-defense when he punched the motorist, Plaintiff cannot show pretext through this argument because it is not relevant to the Court's consideration of whether IDOT had a legitimate, non-discriminatory

reason to discharge Plaintiff. *See id.* at 786 (employee's argument that he was "innocent victim" in workplace fight irrelevant to whether employer had legitimate reason for discharge); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 415 (7th Cir. 1997) (explaining that "no genuine question" exists regarding reason for employee's discharge where employee discharged for fighting in workplace even where employee argued he acted in self-defense).

Plaintiff also likely will point to McCaffrey's altercation in an attempt to show pretext. (*See* Pl.'s Comp. ¶ 35.) But Plaintiff cannot show that a racial bias played a role in Fulgenzi's decision to terminate Plaintiff by pointing to the McCaffrey incident because Fulgenzi was not aware of McCaffrey's alleged altercation and made no employment decision concerning McCaffrey with respect to the incident. (*See* D.56.1 ¶¶ 62, 69; *see also* I.B.2., *supra*.) Thus, the fact that McCaffrey was not disciplined following his alleged altercation is no evidence that Plaintiff's discharge, in this case, was racially motivated.

## II. SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S DISPARATE IMPACT CLAIMS.

### A. Plaintiff's Disparate Impact Claim Under Title VII Is Procedurally Barred.

Plaintiff's disparate impact claim is procedurally barred because Plaintiff failed to administratively exhaust the claim. *See* 42 U.S.C. § 2000e-5 (plaintiff asserting Title VII claims must exhaust administrative remedies before coming to federal court). "Plaintiff's causes of action are limited to those that are within the scope of his [administrative] charge." *DeJesus v. Contour Landscaping, Inc.*, 763 F. Supp. 2d 1029, 1039 (N.D. Ill. 2011). In *DeJesus*, the court dismissed a disparate impact claim as outside the scope of the administrative charge where the employee alleged in his EEOC charge only that his employer demoted him because he was Puerto Rican. *Id.* Like in *DeJesus*, Plaintiff's EEOC Charge alleges only, "On or about August 30, 2010, I was discharged. I believe I have been discriminated against because of my race,

Black." (D.56.1 ¶ 60.) The charge does not mention an IDOT practice or policy that caused a disparate impact on African Americans. Because Plaintiff's disparate impact claim is outside the scope of his EEOC charge, the claim cannot be pursued here. *See DeJesus*, 763 F. Supp. 2d at 1039; *Graham v. Vill. of Dolton*, No. 10 C 1562, 2011 WL 43026, *3 (N.D. Ill. Jan. 6, 2011) (explaining that EEOC charge alleging only individual claim of discrimination "did not even remotely" suggest employee was raising disparate impact claim).

### B.     Plaintiff Cannot Satisfy His Burden Of Proof On A Disparate Impact Claim.

Throughout this litigation, the factual basis for Plaintiff's claim of race discrimination has focused on the alleged disparate treatment between Plaintiff and McCaffrey. (*See generally* Pl.'s Comp.) And while this Court allowed a disparate impact claim to survive IDOT's motion to dismiss, the Court even noted that, "[t]he second amended complaint seems to muddle the indirect method of proving intentional discrimination with a disparate impact claim." (*See* Dec. 1, 2011 Minute O., Dkt. No. 41.) Plaintiff's disparate impact claim is no clearer today.

Plaintiff cannot establish a *prima facie* claim of disparate impact under either Title VII or ICRA.[4] To establish a *prima facie* claim of disparate impact, a plaintiff must demonstrate that a particular employment practice caused a disparate impact on the basis of race. 42 U.S.C. § 2000e-2(k)(1)(A)(i); *see Adams v. City of Chi.*, 469 F.3d 609, 613 (7th Cir. 2006). The plaintiff cannot establish a claim by merely attacking an overall decision making process but must "identify and isolate the specific employment practices" that caused the adverse impact. *Wards Cove Packing Co., Inc. v. Atonio* 490 U.S. 642, 656-657 (1989). If the plaintiff satisfies his burden, the burden shifts to the defendant for rebuttal. *See* 42 U.S.C. § 2000e-2(k).

Plaintiff has yet to identify a particular employment practice that caused injury to him on

---

[4]The analysis for claims under Title VII and the ICRA are the same. *See Hosick v. Chi. State Univ. Bd. of Trustees*, 924 F. Supp. 2 d 956, 966 (N.D. Ill. 2013).

account of his race insofar as the policies identified in Plaintiff's Complaint lack the specificity necessary to satisfy Plaintiff's burden, lack any context showing that an allegedly discriminatory administration of the policies caused a disparate impact on African Americans, and fails to show that administration of the policies caused Plaintiff's injury in a manner sufficient to proceed on his claim. (*See, e.g.,* Pl.'s Comp. ¶¶ 26-29.) Instead, evidence shows that Plaintiff and McCaffrey appear to have been treated the same by local supervisors—*i.e.*, neither incident was reported by ETP management to the personnel office (D.56.1 ¶¶ 44, 69)—but material factual differences between the two incidents that have nothing to do with a discriminatory application of IDOT's policies caused Plaintiff's incident to be investigated and recommended for discharge (D.56.1 ¶¶ 44-46). Moreover, record evidence refutes Plaintiff's contention that "Defendant's disciplinary policy had a disparate impact, where the decision is subject to the policymaking authority's discretion of Giovanni Fulgenzi and/or Diane O'Keefe" (*see* Pl.'s Comp. ¶ 29) because neither Fulgenzi nor O'Keefe are the decision-makers in all instances of workplace misconduct at IDOT. (*See* D.56.1 ¶ 16, 44, 69.) Plaintiff therefore cannot establish a disparate impact claim.[5]

## CONCLUSION

Wherefore, Defendant ILLINOIS DEPARTMENT OF TRANSPORTATION prays that this Honorable Court grant its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff, Terry Butler, on all of Plaintiff claims as a matter of law.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

*s/S. Ann Walls*
S. Ann Walls
Allison Sues
Assistant Attorneys General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601

---

[5] Given Plaintiff's "muddled" pleading on his disparate impact claim and his failure to further define his claim, IDOT reserves its right to raise any appropriate rebuttal to Plaintiff's evidence and arguments related to his disparate impact claim.